# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person, property, or object to be tracked )*<br><br>A silver 2014 Nissan Altima, bearing Wisconsin disabled license plate 77159DS, with VIN: 1N4AL3AP4EC136734 (Subject Vehicle) | ) ) ) ) ) ) Case No. 25-948M(NJ) |

## TRACKING WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ☑ is located in this district; ☐ is not now located in this district, but will be at execution; ☐ the activity in this district relates to domestic or international terrorism; ☐ other: _____.

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that
*(check the appropriate box)* ☐ using the object ☑ installing and using a tracking device
to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

☑ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: A silver 2014 Nissan Altima, bearing Wisconsin disabled license plate 77159DS, with VIN: 1N4AL3AP4EC136734 (Subject Vehicle), located at 1153 S. Boughton Street, Watertown, WI, including any garages and parking pads.

**YOU ARE COMMANDED** to execute this warrant and begin use of the object or complete any installation authorized by the warrant by 6/9/2025 *(no later than 10 days from the date this warrant was issued)* and may continue to use the device until 7/14/2025 *(no later than 45 days from the date this warrant was issued)*. The tracking may occur within this district or another district. To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*
☑ into the vehicle described above ☑ onto the private property described above
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to *(United States Magistrate Judge)* Hon. Nancy Joseph and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☑ Pursuant to 18 U.S.C. § 3103a(b)(1), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and this warrant prohibits the seizure of any tangible property or any wire or electronic communications (as defined in 18 U.S.C § 2510). I therefore authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*
☑ for 30 days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 5/30/2025 9:48 a.m.    *Judge's signature*

City and state: Milwaukee, Wisconsin    Hon. Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

Case No.

### Return of Tracking Warrant With Installation

1. Date and time tracking device installed: _____

2. Dates and times tracking device maintained: _____

3. Date and time tracking device removed: _____

4. The tracking device was used from *(date and time)*: _____

   to *(date and time)*: _____ .

### Return of Tracking Warrant Without Installation

1. Date warrant executed: _____

2. The tracking information was obtained from *(date and time)*: _____

   to *(date and time)*: _____ .

### Certification

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe<br>the object or property to be used for tracking)*<br>A silver 2014 Nissan Altima, bearing Wisconsin<br>disabled license plate 77159DS, with VIN:<br>1N4AL3AP4EC136734 (Subject Vehicle) | Case No. 25-948M(NJ) |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § __841, 846(b) & 846__ . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The activity in this district relates to domestic or international terrorism.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
A silver 2014 Nissan Altima, bearing Wisconsin disabled license plate 77159DS, with VIN: 1N4AL3AP4EC136734 (Subject Vehicle), located at 1153 S. Boughton Street, Watertown, WI, including any garages and parking lots

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

MADDIE MORGAN (Affiliate)  Digitally signed by MADDIE MORGAN (Affiliate)
Date: 2025.05.29 12:50:45 -05'00'
*Applicant's signature*

Maddie Morgan, DEA TFO
*Applicant's printed name and title*

Sworn to before me and signed telephonically.

Date: 5/30/2025

*Judge's signature*

City and state: Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Maddie M. Morgan, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to install and monitor an electronic tracking device to determine the location of a vehicle more particularly described as a silver 2014 Nissan Altima, bearing Wisconsin disabled license plate 77159DS, VIN: 1N4AL3AP4EC136734 (hereinafter "**Subject Vehicle**").

2. I am an Investigator with the Ozaukee County Sheriff's Office and have been a law enforcement officer since December of 2020. I have been an Investigator for 6 months and have been assigned to conduct narcotics investigations throughout that time. I am also a Task Force Officer with the Drug Enforcement Administration (DEA) and have been since March of 2025. I am currently assigned to the DEA Milwaukee District Office. As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3. As part of my duties as a DEA Task Force Officer, I investigate criminal violations relating to narcotics trafficking and money laundering offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I have been involved in electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

4. 4. I have participated in narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. More specifically, my training and experience includes the following:

   a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

   b. I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

   c. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

   d. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations. I am familiar with the language utilized over the telephone or other communication applications to discuss drug trafficking, and know that the language is often limited, guarded, and coded. Additionally, I know that drug traffickers often change their phone numbers and

cellular devices on frequent basis in an attempt to thwart law enforcement from tracking their phones and to conceal their identity.

e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

i. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5. I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of

my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

6. The facts in this affidavit come my personal participation in this investigation, and my review of: (a) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers, all of whom I believe to be truthful and reliable; and (b) information obtained from cooperating witnesses, confidential sources, and/or defendants, whose reliability is established herein. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that the crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances, and use of a communications facility to facilitate a drug-trafficking offense, violations of Title 21 United States Code Sections 841(a)(1), 846, and 843(b), have been committed by Dallas D. SMITH and other known and unknown individuals. There is also probable cause to believe that the location of the **Subject Vehicle** will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

9. Since April 2025, the Drug Enforcement Administration (DEA) has been conducting an investigation involving Dallas D. SMITH (DOB: XX/XX/1988) and other

individuals who are believed to be involved in the distribution of methamphetamine/heroin in the Milwaukee area.

**A. Background**

10. On January 9, 2025, Investigator Zachary Wilkens of the Oshkosh Police Department received information from a confidential source (CS) that an individual by the name of Willie EPPS (DOB: XX/XX/1987) was selling firearms and narcotics in the City of Oshkosh, Wisconsin. Investigator Wilkens conducted four controlled buys from Willie EPPS using a CS from January 8, 2025 to January 16, 2025, purchasing firearms and various narcotics including methamphetamine, cocaine, and fentanyl. Investigator Wilkens had a court-authorized GPS on EPPS' vehicle and monitored his activity from January 15, 2025 until January 27, 2025. On January 27, 2025, EPPS traveled to Milwaukee and parked near 5323 South 13th Street in the City of Milwaukee for approximately five minutes. Later in the same day, EPPS was stopped in Fond Du Lac County and taken into custody. EPPS had almost 100 grams of methamphetamine and a small amount of fentanyl on his person when he was taken into custody. The same day, the Oshkosh Police Department executed a search warrant at EPPS' residence at 929 Wisconsin Street in the City of Oshkosh and located user amounts of methamphetamine, fentanyl, and cocaine.

11. On January 28, 2025, Investigator Wilkens interviewed EPPS at the Fond Du Lac County Jail. During a *Mirandized* interview, EPPS admitted that he bought drugs from a male in Milwaukee that had the Facebook name "Paperchasin Drew." Investigator Wilkens was able to positively identify the male as Dallas D. SMITH, in part, based on data from EPPS' GPS tracker. EPPS stated the day he got pulled over, he was on his way back home from Milwaukee where he had met with SMITH.

12. EPPS' adult criminal history includes convictions for resisting/obstructing an officer (three counts), disorderly conduct (domestic abuse—two counts, non-domestic abuse one count), felony-bail jumping (two counts), OWI with minor passenger, OWI (2nd), OAR (two counts), Interlock Device Tampering/Failure to install/Violate Court Order, Disorderly Conduct (repeater), OWI (3rd), and OWI/PAC (4th). I believe EPPS is credible and that his information is reliable. EPPS' statement was made against his penal interest and was not provided in hope of receiving any benefit (monetary compensation or judicial consideration). Additionally, some of EPPS' information was later corroborated through independent means. For example, EPPS provided the Facebook name of his Milwaukee methamphetamine supplier, and it was the same Facebook name provided by a separate cooperating subject (detailed below).

13. On April 14, 2025, Ozaukee County Sheriff's Office Deputy Michael Zilke conducted a traffic stop on a grey Saturn sedan for failing to stop at a stop sign in Saukville, Wisconsin. The driver, Jessob DIEDERICH, was taken into custody after being found in possession of 168.2 grams of suspected methamphetamine. Deputy Zilke conducted a *Mirandized* interview with DIEDERICH, who admitted to purchasing the methamphetamine in Milwaukee from a black male with the Facebook name of "Paperchasin Drew." DIEDERICH stated the individual lives near S. 13th Street and Layton Avenue in the City of Milwaukee. He was not aware of the exact address but described the house location as two houses towards Layton Avenue from an apartment complex that is across the street from a Packer themed bar. DIEDERICH admitted that a few months ago, he purchased 17-18 pounds of methamphetamine from the same individual in Milwaukee. On April 14, 2025, Deputy Zilke notified Task Force Officer (TFO) Maddie Morgan of the traffic stop and the information DIEDERICH shared during his interview.

14. DIEDERICH's adult criminal history includes convictions for disorderly conduct (domestic abuse—four counts), Possession of THC (two counts), Theft, Battery, Disorderly Conduct (two counts), resisting/obstructing an officer (two counts), possession of narcotic drugs, felony-bail jumping (three counts), criminal trespass to dwelling, and manufacture/deliver amphetamine (10-50g)(PTAC). I believe DIEDERICH is credible and that his information is reliable. DIEDERICH's statement was made against his penal interest and was not provided in hope of receiving any benefit (monetary compensation or judicial consideration). Additionally, some of DIEDERICH's information was later corroborated through independent means. For example, DIEDERICH provided the Facebook name of his methamphetamine supplier, and it was the same Facebook name provided by EPPS. Further, case agents were able to review text message content from DIEDERICH's phone.

15. TFO Maddie Morgan located the Facebook page for "Paperchasin Drew" (URL https://www.facebook.com/paperchasin.drew) user ID 100038640160235 and was able to locate a video on that page that had a shed in the background. TFO Morgan located a residence (5283 S. 13th Street) with the exact shed depicted in that video and matching the description provided by DIEDERICH of his drug supplier's residence. TFO Morgan was able to verify that 5283 S. 13th Street was Dallas SMITH'S residence by checking Wisconsin Department of Corrections (WIDOC) records. SMITH's address was last updated with WIDOC on or about August 1, 2022. The residence is also approximately 150 feet from where Willie EPPS' GPS location data showed his vehicle was on the day that EPPS was taken into custody. In December 2018, SMITH was arrested by Milwaukee Police Department for Possession of Heroin with Intent, Possession of Narcotic Drugs, and Maintain Drug Trafficking Place. SMITH is currently on supervision through the Wisconsin Department of Corrections for Felon in Possession of a

Firearm and Possession of Narcotic Drugs. I learned from WIDOC that SMITH is currently in absconder status from his supervision.

16. On April 15, 2025, case agents conducted surveillance at SMITH'S residence at 5283 S. 13th Street in the City of Milwaukee, Wisconsin 53221. During the surveillance, case agents observed a silver Nissan Altima sedan pull into the driveway. The silver Nissan was bearing Wisconsin registration 77159DS (Hereinafter, **Subject Vehicle**). Wisconsin Department of Transportation (WIDOT) records show that the **Subject Vehicle** is registered to Robin DONALD (XX/XX1969) and has a VIN of 1N4AL3AP4EC136734. DONALD is SMITH'S mother.

17. On April 17, 2025, TFO Morgan and Special Agent (SA) Tyler Owenby met with Jessob DIEDERICH at the Ozaukee County Jail. DIEDERICH consented to going through his cell phone and consented to a forensic download of his cell phone. DIEDERICH provided two phone numbers for Dallas SMITH, 262-389-1213 and 262-402-2859, saved in his phone as "Plugs" and "Chad's Plug," respectively. DIEDERICH showed TFO Morgan and SA Owenby a conversation between DIEDERICH and SMITH using 262-389-1213 from April 13, 2025, a few hours prior to DIEDERICH getting stopped by Ozaukee County Sheriff's Office. In these text messages, TFO Morgan observed: SMITH stated, "For 900$ I'll give u 5oz For the demo I'll give u 2oz Yea all together 7oz" to which DIEDERICH responded, "I don't need any hard tho maybe some down idk what I'd do with the ball of hard." Based on training and experience, TFO Morgan knows that "hard" is a common street name for crack cocaine. TFO Morgan also knows that "down" refers to a "downer" drug such as fentanyl, heroin, or benzodiazepines. DIEDERICH was arrested in possession of approximately 168 grams of methamphetamine,

which is roughly 5.9 ounces. I believe this amount to be generally consistent with the quantities being discussed between DIEDERICH and SMITH in the above-described text exchange.

18. DIEDERICH stated to case agents that he has been purchasing various narcotics from SMITH for the past few months. DIEDERICH stated he first spoke with SMITH via his Facebook page, "Paperchasin Drew." He had added him as a friend after his associate "Chad" was taken into custody for narcotic charges. DIEDERICH advised "Chad" had been purchasing methamphetamine from SMITH originally and he would occasionally go with "Chad" to Milwaukee to purchase it. After "Chad" was taken into custody, he went directly to SMITH via his Facebook page. SMITH provided DIEDERICH his cell phone number via Facebook messenger.

19. DIEDERICH stated he believed SMITH used Facebook messenger to communicate with other people purchasing narcotics from him. He was shown a photograph of 5283 S. 13th Street and confirmed that was the residence where SMITH resided. He was shown a photograph of SMITH and confirmed that he was the individual DIEDERICH had been purchasing narcotics from and that SMITH was the individual with the Facebook name "Paperchasin Drew." DIEDERICH informed case agents on a few different occasions that he had been picked up by SMITH in the Milwaukee area in a silver sedan. He described it as having red rims and dark tint. He was also shown a picture of **Subject Vehicle** and confirmed that was the vehicle that SMITH was driving when he picked him up in Milwaukee. DIEDERICH did not know of any other vehicles that SMITH drove.

20. On April 25, 2025, the Honorable Stephen Dries Magistrate Judge for the Eastern District of Wisconsin granted a search warrant for prospective location data related to SMITH's phone (herein Target Telephone). Since that time, case agents have monitored the general

location of SMITH's device, which has assisted in conducting surveillance and furthering the investigation because it has allowed case agents to establish locations that SMITH frequents. It has also given insight into individuals that SMITH is involved with in related to drug trafficking (customers, co-conspirators, sources of supply, etc.) On the same date, the Honorable Stephen Dries, Magistrate Judge for the Eastern District of Wisconsin, granted a court order authorizing the installation and use of a pen register and trap and trace device or process ("pen-trap device") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from Dallas SMITH'S cell phone number. Since that time, case agents have monitored incoming and outgoing communications to the phone number and have established persons that SMITH regularly contacts.

21. On May 1, 2025, case agents utilized Flock Safety to conduct a check on the silver Nissan Altima bearing Wisconsin registration 77159DS (**Subject Vehicle**), believed to be frequently driven by SMITH. Case agents observed that the Nissan Altima (**Subject Vehicle**) hit on a Flock camera at Fond Du Lac Road and Capitol Drive in the City of Milwaukee at 6:48PM. Case agents monitored the prospective location data of SMITH's cell phone and observed that it was down the block from that location at 6:50PM on the same date. On May 2, 2025, case agents observed that 77159DS, the silver Nissan Altima (**Subject Vehicle**), hit on a Flock camera at Bluemound Road and Plaza Court in the City of Brookfield at 2:06PM. The prospective location data of SMITH'S phone showed a location a few blocks from the Flock camera at 2:05PM on the same date.

22. On May 7, 2025, case agents monitoring the court authorized PING on SMITH'S cellular number (Target Telephone) observed the Target Telephone travel from Milwaukee, Wisconsin to Watertown, Wisconsin. The Target Telephone was observed to be in the Milwaukee

area at approximately 5:36PM, but by 6:36PM, it was observed in the Watertown area. Case agents continued to monitor the Target Telephone and did not observe it to leave the Watertown area until approximately 12:07PM on May 8, 2025. The Target Telephone was observed to PING south of Watertown moving towards Johnson Creek. Case agents obtained two PINGS (12:22PM and 12:37PM) that placed the Target Telephone near the intersection of Highway 26 and Interstate 94 in Johnson Creek, which is in close proximity to several gas stations, restaurants, and the Johnson Creek Premium Outlet Center. Case agents observed another PING on the Target Telephone at 1:07PM that placed the phone back in the Watertown area.

23. On May 8, 2025, case agents from Milwaukee DEA Group 61 traveled to Watertown to begin searching for the **Subject Vehicle.** At approximately 2:50PM, Special Agent Tyler Owenby located the **Subject Vehicle** in the parking lot of the Watertown East Apartments at 1153 S. Boughton Street, Watertown, Wisconsin. The **Subject Vehicle** was parked on the East side of Building 16, nearest to Apartment F. Building 16 appeared to have six units in the building and the units were marked with the letters A through F above the doors. Unit A is on the west end of the building and Unit F is on the east end of the building. Case agents established surveillance in the area but the **Subject Vehicle** did not move. Throughout the time that the case agents were on surveillance SMITH'S PING did not move and was in the general area that included 1153 S. Boughton Street.

24. Case agents determined that Rachel A. KRAEMER (XX/XX/1987) was one of SMITH'S frequent contacts (at the Target Telephone). Case agents used other law enforcement records and the Wisconsin Department of Transportation (WIDOT) records to determine that KRAEMER operates a 2015 Ford Escape bearing Wisconsin registration AGL5935. On May 20, 2025, case agents, utilizing Flock Safety, observed that KRAEMER'S vehicle had hit on a Flock

camera at Martin Luther King Drive and W. North Avenue in the City of Milwaukee. Case agents know that KRAEMER resides in New Holstein, WI and hits on Flock cameras approximately once a week in the Milwaukee area. At approximately 2:47PM on the same date, the 2015 Ford Escape hit on a Flock camera in the Village of Saukville, WI in Ozaukee County. Saukville Police Department Officer Brandin Depies conducted a traffic stop on the vehicle in his jurisdiction for a traffic violation. Officer Depies identified the driver as Rachel KRAEMER via Wisconsin driver's license and she was taken into custody for a criminal traffic offense. Officer Depies requested a K9 respond to the location of the stop and the K9 indicated positively on the vehicle. A search of the vehicle was conducted, and Officer Depies located a white/clear rock like substance on the driver's seat that tested positive for cocaine. Officer Depies also located twisted receipts in the center console containing a tan rock-like substance and a white rock-like substance. The tan substance tested positive for fentanyl and the white substance tested positive for cocaine. KRAEMER was arrested for Possession of Cocaine, Possession of Narcotics, and Possession of Drug Paraphernalia, as well as the traffic related offenses. I attempted to review pen register/trap and trace data and for SMITH's phone (Target Telephone) for May 20, 2025, however, that number was deactivated on May 19, 2025.

25. On May 21, 2025, case agents interviewed KRAEMER while she was in custody at the Ozaukee County Jail. KRAEMER informed case agents that she bought the narcotics that were located in her vehicle from an individual she refers to as, "D." KRAEMER stated she drove down to the City of Milwaukee for a few hours the day before in order purchase the narcotics. She stated "D" reached out to her and a silver car pulled up to her car. KRAEMER was boisterous and uncooperative during the interview and only gave limited information. She stated there were two black males in the vehicle and that she entered the silver car and sat in the back passenger seat.

Case agents note that the **Subject Vehicle** is silver in color and is a four-door sedan with a back passenger seat. She believed she purchased two grams of heroin and two grams of crack for approximately $210-$220. KRAEMER insisted she did not have any further information and ended the interview. KRAEMER denied consent to go through her cell phone. On the same day, the Honorable Sandy Williams, Ozaukee County Judge, signed a search warrant authorizing the cell phone be removed from the jail property and be searched. The cell phone search is pending. KRAEMER has a prior conviction for possession of drug paraphernalia (PTAC) and had an open misdemeanor case in Calumet County for possession of drug paraphernalia at the time of her Ozaukee arrest (Calumet initial appearance is set for June 9, 2025).

26. Case agents believe that KRAEMER's limited information concerning the drug transaction on May 20, 2025 is accurate and reliable. KRAEMER's statement was made against her penal interest and was not provided for monetary payment or in hopes of receiving any judicial or prosecutorial consideration. Further, the information is partly corroborated by the Flock data which is consistent with KRAEMER's statement that she bought drugs within the City of Milwaukee.

27. Based on the physical surveillance and electronic surveillance, I believe that Dallas SMITH is using the **Subject Vehicle** in connection with drug trafficking. Based on **Subject Vehicle** being identified by DIEDERICH as the vehicle SMITH is driving as well as Rachel KRAEMER advising she entered a silver vehicle to purchase narcotics from "D," I believe that **Subject Vehicle** is being used in connection with drug trafficking. Based upon my own observations, I know that the **Subject Vehicle** is presently within the Eastern District of Wisconsin.

## TECHNICAL BACKGROUND

28. Law enforcement therefore believes, based on the foregoing, that the **Subject Vehicle** is presently within the Eastern District of Wisconsin.

29. In order to track the movement of the **Subject Vehicle** effectively and to decrease the chance of detection, law enforcement seeks authorization to place a tracking device on the **Subject Vehicle** while it is in the Eastern District of Wisconsin. Because the **Subject Vehicle** could be parked in a private driveway/parking lot and on other private property, it may be necessary to enter onto private property and/or move the **Subject Vehicle** to effect the installation, repair, replacement, and removal of the tracking device.

30. To ensure the safety of the executing officers and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours. Based on my training and experience, individuals engaged in drug trafficking and other criminal conduct are often armed. Further, I know that the address where I have observed the **Subject Vehicle** parked (1153 S. Boughton Street in Watertown, WI) is a multi-building apartment complex with numerous individual units and larger common parking lots that are visible to numerous residents. The daytime visibility of the **Subject Vehicle's** anticipate location makes it likely that nighttime installation will be necessary to avoid detection.

31. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period not to exceed 45 days following issuance of the warrant. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## CONCLUSION

32. Based on the foregoing, I request that the Court issue the proposed search warrant,

pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes law enforcement, including but not limited to your affiant and technicians assisting in the above-described investigation, to install a tracking device on the **Subject Vehicle** within the Eastern District of Wisconsin within 10 days of the issuance of the proposed warrant; to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the **Subject Vehicle** after the use of the tracking device has ended: to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter the outside property of and/or move the **Subject Vehicle** to effect the installation, repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Eastern District of Wisconsin.

33. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).